UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

NANCY CRESPO-LONG,

          Plaintiff,

v.     Case No. 5:05-cv-504-Oc-10GRJ

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

          Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Social Security Disability Benefits ("SSDI"). (Doc. 1.) The Commissioner has answered (Doc. 3) and both parties have filed briefs outlining their respective positions. (Docs. 9 &12.) For the reasons discussed below the Commissioner's decision is due to be **REVERSED AND REMANDED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on April 15, 2002, alleging an onset date of June 15, 2001. (R. 50-53.) Her claim was denied initially and upon review. (R. 35-37, 38-39.) A hearing was held before Administrative Law Judge David G. Danziger (the "ALJ") on December 10, 2004. On

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

May 10, 2005 the ALJ issued a decision unfavorable to Plaintiff. (R. 10-20.) Plaintiff's request for review of that decision was denied by the Appeals Council on October 19, 2005, rendering the ALJ's decision the final decision of the Commissioner. (R. 4-6.) On December 16, 2005, Plaintiff filed the instant appeal to this Court of the Commissioner's final decision. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision

---

[2] See 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2003) (All further references to 20 C.F.R. will be to the 2003 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the Grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18] In a situation where both exertional and non-exertional impairments are

---

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2.  In Doughty the court explained this burden shifting as follows:
  In practice, the burden temporarily shifts at step five to the Commissioner. The
  Commissioner must produce evidence that there is other work available in
  significant numbers in the national economy that the claimant has the capacity to
perform.  In order to be considered disabled, the claimant must then prove that he is
unable to perform the jobs that the Commissioner lists. The temporary shifting of the
burden to the Commissioner was initiated by the courts, and is not specifically provided
for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996).  See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III. **SUMMARY OF THE RECORD**

Plaintiff was born on April 13, 1960 and was 44 years old at the time of the ALJ's decision. (R. 12, 270.) Plaintiff completed high school, two years of law enforcement training at the police academy and attended a two-month travel consultant program. (R. 270-71.) Plaintiff previously worked as a New York City foot patrol officer for twelve years. (R. 55, 291.)

While working as a foot patrol officer, Plaintiff sustained a knee injury which resulted in a torn meniscus[22] in her left knee. (R. 107-108, 148.) Plaintiff underwent a medial meniscectomy in 1990 to repair the damage. (R. 129.) After rehabilitation,

---

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] *See id.*

[22] A crescent-shaped fibrocartilaginous strucutre of the knee, the acromio-and sternovlavicular and temporamandibular joints. Lippincott, Williams & Wilkins, Stedman's Medical Dictionary (27th ed. 2000).

Plaintiff was able to return to full duty until she dislocated her left knee in November of 1992, resulting in a second surgery to the left knee. (R. 148.) Plaintiff was kept on light duty status and underwent a third exploratory surgery of the left knee in February of 1996. (R. 104.) Following surgery, her surgeon, Stuart Springer, M.D., noted traumatic grade III chondromalacia[23] of the left patella, articular cartilage loose bodies, and status post lateral retinacular release of the left knee. (R. 104-105.) On September 10, 1996, the Medical Board Police Pension Board recommended Plaintiff for Accident Disability Retirement due to her orthopedic problems that prevented her from performing a full range of duties as a police officer. (R. 108.)

Thereafter, Plaintiff moved to North Carolina and worked as a hotel driver and then as a travel agent. (R. 68-71, 273.) Plaintiff alleged that she became unable to work on June 15, 2001 due to a left knee injury, status post left knee surgeries, chronic pain in the left knee and anxiety. (50, 55-63, 282-83.)

The Office of Disability Determinations referred Plaintiff to Charles Grant, M.D. for a medical evaluation in July of 2002. (R. 148.) Upon examination of Plaintiff's knees, Dr. Grant noted that the left knee showed well-healed scars and that Plaintiff has some hyperesthesia[24] over the medial aspect of the knee. (R. 150.) Dr. Grant also noted decreased range of motion of the left knee. Dr. Grant diagnosed Plaintiff with left knee pain and status post-surgical intervention times three. (R. 151.)

---

[23] Softening of the cartilage. *Id*.

[24] Abnormal acuteness of sensitivity to touch, pain or other sensory stimuli. *Id*.

A non-examining state agency physician completed a physical RFC form in August 6, 2002. (R. 168-75.) The physician determined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds. Plaintiff could stand/walk for 6 hours and sit for 6 hours in an 8-hour workday. (R. 169.) Furthermore, the physician concluded that Plaintiff could occasionally climb, kneel, crouch and crawl and frequently balance and stoop. (R. 170.)

On October 3, 2002, Dr. O. F. Cannon, of the Ocala Orthopaedic Group, examined Plaintiff's knee. (R. 176-77.) Dr. Cannon found decreased range of motion, diffuse joint line tenderness, positive for McMurray's maneuver[25] and patellofemoral crepitus[26]. Dr. Cannon discussed various treatments with Plaintiff, including a knee brace and the medication Vioxx. (R. 176.)

A second disability examination was performed by Dr. Donald Tindall on June 23, 2003. (R. 189-90.) Dr. Tindall noted that Plaintiff was able to sit for 30 minutes, stand for 25 minutes and lift 15 pounds. Plaintiff told Dr. Tindall that she performs housework but not yard work. (R. 189.) Dr. Tindall observed that Plaintiff could get out of a chair and on to the examination table without significant difficulty. (R. 190.) Additionally, Plaintiff had "give way" with strength testing of the left knee, moderate diffuse swelling and tenderness over the medial and lateral joint lines and patellar tendon. Id. Furthermore, Dr. Tindall noted that Plaintiff was negative with regard to a McMurray's test. Dr. Tindall

---

[25] A test that rotates the tibia on the femur to determine injury to meniscal structures. Id.

[26] Noise or vibration produced by rubbing bone or irregular degenerated cartilage surfaces together as in arthritis and other conditions. Id.

concluded that Plaintiff had chronic left knee pain, decreased range of motion consistent with scar tissue, degenerative arthritis and grade III chrondromalacia. Id.

A second non-examining state agency physician, Christina B. Rodriquez, M.D., completed a Physical RFC Assessment in July of 2003 and concluded that Plaintiff had pain in her left knee and a medically determinative impairment. (R. 191, 196.) Dr. Rodriguez found that Plaintiff had the RFC to lift 20 pounds occasionally and to lift 10 pounds frequently. Plaintiff required a hand-held assistive device for ambulation and must periodically alternate sitting and standing to relieve pain. (R. 192.) Furthermore, Dr. Rodriguez noted that Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. 193.)

Plaintiff was then treated by William Stalcup, II, D.O. of West Coast Orthopaedics, P.A. commencing in April 2004. (R. 255-66.) The first examination of record showed that Plaintiff walked with a steppage type gait and that both of Plaintiff's knees had tenderness. (R. 262.) Additionally, the right knee revealed a positive McMurray's 2/2 times with external rotation. Dr. Stalcup prescribed Bextra to Plaintiff. An MRI of Plaintiff's right knee revealed a tear in the posterior horn of the medial meniscus, which prompted Dr. Stalcup to schedule Plaintiff for surgery.

Plaintiff had to delay surgery and was reexamined by Dr. Stalcup in November of 2004. (R. 259.) Plaintiff complained to Dr. Stalcup about continued right and left knee pain, including clicking and popping of both of the knees. Id. Unable to go through surgery at that time, Dr. Stalcup injected Plaintiff's right knee with Lidocain, Marcaine and Depo Medrol for the pain. Id. In December of 2004, an MRI of the left knee showed significant chondromalacia patella and some increased signal of the posterior horn of

the medial meniscus. (R. 257, 264-66.) Dr. Stalcup discussed with Plaintiff the benefit of arthroscopy surgery with patellar shaving and a subqulateral retinacular release. (R. 259.)

At the hearing, Plaintiff testified that she has excruciating pain behind the knees and in the back of her legs. (R. 278-79.) She stated that she was scheduled for surgery on her left knee in February and after that heals, Plaintiff will need surgery on her right knee. (R. 278.) Plaintiff also testified that she is learning to play golf and practices at the golf range for an hour. (R. 278-80.) She reported that she cleans the house with her husband, loves to cook and does needle point for one hour at a time. (R. 295-97.) Plaintiff used a cane several years ago and currently has a knee brace and a fatigue mat to reduce the stress on her knees. (R. 280-81.)

## IV.  DISCUSSION

The Court need not address all of the issues raised by Plaintiff in her brief in view of the fact that the Court concludes that the ALJ erred in his RFC analysis by failing to articulate the number of hours Plaintiff could sit, stand, and walk and then compounded the error by failing to analyze the functional limitations of Plaintiff's past relevant work as she actually performed it.

Social Security Ruling 96-8p, provides that an RFC analysis must address the exertional capacity of an individual. An exertional capacity "defines the individual's remaining abilities to perform each of the seven strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling." Furthermore, SSR 96-8p requires that each strength must be considered separately and includes as an example - "'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours.'"

In the instant case, the ALJ found that Plaintiff has the residual functional capacity to "lift at least up to 10 pounds at a time and occasionally lift and carry such articles as docket files, ledgers, small tools; occasional walking or standing; a good deal of sitting with positional changes during normal breaks; but no significant stopping." (R. 18.)

According to Plaintiff, the ALJ violated Social Security Ruling 96-8P by failing to specify the number of hours that Plaintiff could sit, stand and walk and instead simply finding that Plaintiff could engage in a "good deal of sitting" and could engage in "occasional' walking or standing." Furthermore, Plaintiff contends that such an ambiguous definition of Plaintiff's RFC makes it impossible to analyze whether or not Plaintiff has the ability to perform her past relevant work.

While the ALJ's determination that Plaintiff could engage in "occasional" walking or standing arguably may be adequate,[27] the ALJ's determination that Plaintiff could engage in a "good deal" of sitting is not because the use of this term makes it virtually impossible to discern the nature of the ALJ's analysis of Plaintiff's functional limitations regarding sitting. Moreover, the ALJ's use of the term "occasional" for his assessment of Plaintiff's ability to stand and walk in conjunction with his finding that Plaintiff could

---

[27] Social Security Ruling 83-10 defines "occasionally" as "occurring from very little up to one-third of the time." At the sedentary level of exertion, "occasionally" with regard to standing or walking means two hours or less in an eight-hour workday. Furthermore, the ALJ's opinion that Plaintiff could stand or walk "occasionally" was generally consistent with the opinions of the non-examining state agency physicians. Both reports of the non-examining state agency physicians concluded that Plaintiff had the RFC to perform light work (R. 168-75, 191-99.), requiring "a good deal of walking or standing". Whereas, the ALJ decided that Plaintiff could only perform sedentary work, which is far less demanding with regard to standing and walking than light work. Thus, if the Plaintiff's only challenge was to the use of the phrase "occasional" by the ALJ with regard to standing and walking the result may have been different.

engage in a "good deal" of sitting renders the ALJ's overall RFC assessment of Plaintiff's limitations regarding sitting, standing and walking incapable of evaluation.

The error with regard to the ALJ's vague and ambiguous articulation of Plaintiff's limitations concerning sitting, standing and walking is material to the ALJ's disability determination in this case in view of the fact that Plaintiff's major complaints are her inability to stand for long periods of time and her claims that her knees give out periodically.[28] (R. 281, 286-87.)

Because the ALJ did not identifying the specific number of hours the Plaintiff could perform any one of the strength demands of sitting, standing or walking - and instead merely concluded that she could do a "great deal" of sitting - it is impossible for the Court to analyze whether or not the ALJ properly assessed Plaintiff's RFC for sedentary work.

The error, however, does not end there. The ALJ's failure to identify in a meaningful way the Plaintiff's limitations regarding sitting, standing and walking is compounded by the ALJ's failure to identify the functional requirements of Plaintiff's past relevant work as a travel agent.  Without developing a detailed description of the required duties and physical demands of a claimant's past work, the Commissioner cannot properly determine whether a claimant has the RFC to perform such work.[29]

---

[28] Specifically regarding her past work as a travel agent, Plaintiff states, "I thought it would be, but it wasn't. Everybody thinks it's a sit-down job, but when you have a client come into the office...one gets up and goes to various files...If it's a long, extensive visit, then you might serve coffee for them, too, so it was a lot of sitting and standing and bending." (R. 274.)

[29] Schnorr v. Bowen, 816 F.2d 578 (11th Cir. 1987)(citing Nelms v. Bowen, 803 F.2d 1164 (11th Cir. 1986)).

According to Social Security Ruling 82-62, "Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." Furthermore, "the decision as to whether the claimant retains the functional capacity to perform past work...must be developed and explained fully in the disability decision." This explanation is most often derived from detailed information obtained from the claimant, employer or other information source about strength, endurance, mental demands and other job requirements. Id.

Here, the ALJ found that, as Plaintiff described it, the job of a travel consultant "required alternative sitting, standing, and walking throughout and [sic] 8-hour workday in addition to writing, typing and handling." (R. 19.) The description lacks specificity as to the physical demands of Plaintiff's past work by failing to suggest time limits - or even a range of time limits - regarding Plaintiff's ability to sit, stand or walk.  The Court is left to guess as to whether Plaintiff's past relevant work involved sitting for only one hour and alternating the rest of the day with standing and walking or some other possible combination of sitting, standing and walking which would meet the definition of "alternative sitting, standing and walking throughout an 8 hour workday."

The ALJ's finding that Plaintiff's past relevant work required "alternative sitting, standing and walking" is not a mere semantical oversight but is rather suggestive that the ALJ did not properly evaluate the available evidence concerning the strength demands of Plaintiff's past relevant work as a travel agent.

For example, Plaintiff described her work as a travel agent on two separate occasions. In Plaintiff's application for disability benefits, Plaintiff checked the box

indicating that the job required her to perform walking, sitting and standing but she did not specify the total hours for each per workday. (R. 69.)  During the hearing, however, the Plaintiff specifically addressed in more detail the strength demands of her job as a travel consultant. Plaintiff testified that as a travel agent she performed bending and some climbing in addition to a lot of sitting and standing. (R. 274.) Notably, she testified that she frequently alternated between sitting, standing and bending in order to obtain files and meet with clients. Thus, there was substantial evidence of record that Plaintiff's job as a travel agent required her to do more than sitting most of the day and that she was required frequently to walk, stand and bend to meet with clients and to get their files. Indeed, according to Plaintiff, her inability to do exactly this was the reason she was unable to continue to work in that particular job as a travel agent.

While the job of travel agent, as it is generally performed in the national economy may be capable of being performed at the sedentary level,[30] the ALJ never addressed this issue but rather ended the step four sequential analysis with his finding that Plaintiff could perform her work as a travel agent as she actually performed it.

Apparently recognizing the error by the ALJ with regard to his determination that Plaintiff could perform her past relevant work as she performed it, the Commissioner suggests that the Court should not remand the case to the Commissioner to make a specific finding regarding Plaintiff's ability to perform her job as generally performed in the national economy because it would be a waste of judicial and administrative resources. The Court disagrees.

---

[30] *See,* U.S. Department of Labor, Dictionary of Occupational Titles § 252.152-101 (4th ed. 1991) classifying job of travel consultant as sedentary work.

On remand the ALJ is not only required to re-evaluate whether the Plaintiff can perform her past relevant work either as she performed it or as the job is performed in the national economy but also to re-evaluate the Plaintiff's RFC as it relates to the length of time Plaintiff can sit, stand and walk and her limitations, if any, in performing these strength demands. The re-evaluation of these issues may materially impact the ALJ's evaluation of Plaintiff's ability to perform past relevant work and, accordingly, remand of this action would not, as suggested by the Commissioner, be a waste of judicial and administrative resources.[31]

## V.  CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for the Administrative Law Judge to: (1) re-evaluate Plaintiff's RFC, including specific limitations regarding Plaintiff's ability to sit, stand and walk; (2) address the physical demands of Plaintiff's past relevant work as a travel consultant, including an evaluation of the requirements for sitting, standing and walking; and (3) conduct such further proceedings as the Commissioner deems appropriate. The Clerk is directed to enter final judgment and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 7, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

---

[31] For this same reason, even though the ALJ made an alternative finding of no disability by applying the Grids, the case still is due to be remanded. Because the ALJ is being directed to re-evaluate Plaintiff's RFC as it concerns her ability to sit, stand and walk, the re-evaluated RFC may impact the propriety of reliance on the Grids or even if reliance on the Grids is appropriate, it may impact the finding of disability under the Grids.